[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff James P. Butler, Commissioner of the Department of Labor, brings this action under General Statutes § 31-72, wherein he seeks to collect unpaid wages on behalf of Marjorie J. Skidmore. In count one he alleges that Skidmore was employed by defendant Hartford Technical Institute, Inc. during the period April 24, 1992 to March 8, 1993 as a general bookkeeper, that on April 28, 1993 Skidmore sought assistance in obtaining unpaid wages from the institute, that the plaintiff found unpaid wages were owed to Skidmore, and that although demand upon the institute was made, the institute has CT Page 9221 refused to make payment.
In count two plaintiff seeks payment for the unpaid wages from defendant Robert Myers who was the president, treasurer, and in control of Hartford Technical Institute, Inc. Plaintiff alleges in count two that Robert Myers was specifically responsible for, and specifically the cause for,
In count two plaintiff seeks payment for the unpaid wages from defendant Robert Myers who was the president, treasurer, and in control of Hartford Technical Institute, Inc. Plaintiff alleges in count two that Robert Myers was specifically responsible for, and specifically the cause for, the withholding of, and the failure to make payment to Skidmore.
In count three plaintiff alleges that Robert Myers was the alter ego of the institute and therefore should be responsible for payment of the wages.
Defendants have denied that they owe any wages to Skidmore and have raised two special defenses. In the first special defense they claim Skidmore was a non-exempt salaried employee, and was employed in a bona fide executive administrative, and professional capacity. In the second special defense they claim Skidmore has been paid all sums to which she was entitled.
A trial to the court was held on September 26 and October 1, 1996. The court finds the following facts:
Marjorie Skidmore worked for the Hartford Technical Institute, Inc. from April 24, 1992 to March 8, 1993 as a bookkeeper. She is seeking payment for overtime work. The evidence at trial showed that Skidmore had in fact worked overtime hours for which she was not paid. General Statutes § 31-76c provides:
 "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half CT Page 9222 times the regular rate at which he is employed."
Defendants claim that Skidmore was an exempt employee under General Statutes § 31-58 (f) which excludes "an individual employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the labor commissioner . . ."
Thus, the main issue raised at trial was whether Skidmore was an exempt employee because, as claimed by defendants, she was employed in a bona fide executive, administrative or professional capacity.
According to the Regulations an employee in a "bona fide executive capacity" is defined in § 31-60-14 in pertinent part as follows:
 "any employee (a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and (b) who customarily and regularly directs the work of two or more other employees therein, and (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other changes of status of other employees will be given particular weight; and (d) who customarily and regularly exercises discretionary powers,. . . .
The court finds that Skidmore's primary duty did not consist of the management of the enterprise or any subdivision thereof, nor did she direct the work of two or more employees, nor did she have the authority to hire or fire or promote or change the status of other employees, nor did she customarily and regularly exercise discretionary powers.
According to the regulations an employee in a "bona fide administrative capacity" is defined in § 31-60-15 in pertinent part as follows: CT Page 9223
 "any employee: (a) whose primary duty consists of either: (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or (2) the performance of functions in the administration of a school system or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and (b) who customarily and regularly exercises discretion and independent judgment; and (c)(1) who regularly and directly assist a proprietor, or an employee employed in a bona fide executive or administrative capacity, as such terms are defined in section 31-60-14 and 31-60-15, or (2) who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or (3) who executes under only general supervision special assignments and tasks; and (d) who does not devote more than twenty per cent . . . of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in subdivisions (a) to (c), inclusive, of this section; and (e) (1) who is compensated for his services on a salary or fee basis at a rate of not less than one hundred twenty-five dollars per week exclusive of board, lodging or other facilities, or (2) who, in the case of academic administrative personnel, is compensated for his services as required by subparagraph (1) of this subdivision or on a salary basis which is at least equal to the entrance salary for teachers in the school system or educational establishment or institution by which he CT Page 9224 is employed; provided an employee who is compensated on a salary or fee basis at a rate of not less than one hundred seventy-five dollars per week, exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in subdivision (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section."
The court finds that Skidmore's primary duty did not consist of exercising discretion and independent judgment, nor did she perform under only general supervision along specialized or technical lines requiring special training, experience, or knowledge, nor did she execute special assignments and tasks under only general supervision.
According to the Regulations an employee in a "bona fide professional capacity" is defined in § 31-60-10 in pertinent part as follows:
 "any employee (a) whose primary duty consists of the performance of: (1) work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes or (2) work that is original and creative in character in a recognized field of artistic endeavor, as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training, and the result of which depends primarily on the invention, imagination or talent of the employee or (3) teaching, tutoring, instructing or lecturing in the activity of imparting CT Page 9225 knowledge while employed and engaged in this activity as a teacher certified or recognized as such in the school system or educational establishment or institution by which he is employed; and (b) whose work requires the consistent exercise of discretion and judgment in its performance; and (c) whose work is predominantly intellectual and varied in character, as opposed to routine mental, manual, mechanical or physical work, and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and (d) who does not devote more than twenty per cent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in subdivisions (a) to (c), inclusive, of this section."
The court finds that Skidmore's primary duty did not consist in work requiring knowledge of an advanced type or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, nor did her primary duty consist of work original and creative in a recognized field of artistic endeavor, nor did her primary duty consist of teaching, tutoring, instructing or lecturing, nor did her primary duty consist of work which required consistent exercise of discretion or judgment, nor was her work predominantly intellectual and varied as opposed to routine.
Thus, the court finds that Skidmore was not an exempt employee under General Statutes § 31-58 (f) because she was not employed in a bona fide executive, administrative or professional capacity. Her duties were primarily those of a bookkeeper. She handled accounts receivable, accounts payable, payroll, and checkbooks. She made no decisions that would impact on the business and had no authority to make policy or to supervise employees. She did train one employee to handle accounts payable but that was only for a couple of weeks. She was closely supervised by both Robert Myers and Susan Myers and performed only work which they requested. She CT Page 9226 did not act independently or use independent judgment. Accordingly, she was entitled to be paid for her overtime work.
Defendant Myers claimed at trial that Skidmore had not been authorized to do overtime work. The court finds, however, that on several occasions she was expected to work overtime and in fact did so.
Defendants failed to keep records of Skidmore's overtime hours as required by General Statutes § 31-66 and § 31-60-12 of the Regulations. Therefore, the Commissioner relied on the records kept by Skidmore (Defendant's Exhibit A). Based on the records submitted by Skidmore, the Commissioner determined that Skidmore is entitled to $5,287.74 in overtime pay plus interest (Plaintiff's Exhibit 2). In accordance with General Statutes § 31-72 Commissioner further determined that Skidmore is entitled to twice the full amount of her unpaid wages, or $10,575.48, plus interest in the amount of $2,629.82, plus an attorneys fee in the amount of $1,000.00, for a total of $14,205.30.
The Commissioner seeks payment on behalf of Skidmore not only from defendant Hartford Technical Institute, Inc., but from defendant Robert Myers individually as well. The court finds that she is entitled to payment under the second count of the complaint from Robert Myers individually. He was the president and treasurer and the person in control of the institute. The evidence at trial clearly indicated that he was solely responsible for all decisions in regard to wages. He was specifically the cause for the withholding of, and the failure and refusal to pay the overtime wages to Skidmore.Grossman v. Centaur Sciences, Inc., 14 C.L.T. 40, 760 (1988).
Under count three the plaintiff has also asked the court to pierce the corporate veil in order to find defendant Myers responsible for payment of the unpaid wages. The court does not believe the plaintiff has presented sufficient evidence in order for it to pierce the corporate veil and it will not do so.
Accordingly, under count one judgment may enter for the plaintiff against defendant Hartford Technical Institute, Inc. in the amount of $14,205.30. Under count two judgment may enter for the plaintiff against defendant Robert Myers in the CT Page 9227 amount of $14,205.30.
Frances Allen State Judge Referee